# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Filed December 9, 2005

No. 02-1387

STATE OF NEW YORK, ET AL.,
PETITIONERS

v.

ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENT

NSR MANUFACTURERS ROUNDTABLE, ET AL.,
INTERVENORS

---

Consolidated with
03-1016, 03-1033, 03-1036, 03-1040, 03-1041, 03-1044,
03-1045, 03-1046, 03-1047, 03-1048, 03-1049, 03-1050,
03-1051, 03-1052, 03-1054, 03-1055, 03-1056, 03-1057,
03-1104, 03-1130, 03-1131, 03-1135, 03-1175, 03-1176,
03-1177, 03-1178, 03-1437, 03-1448, 03-1457

---

On Petitions for Rehearing

---

Before: ROGERS and TATEL, *Circuit Judges*, and WILLIAMS,
*Senior Circuit Judge*.

## O R D E R

Upon consideration of the petition of the Utility Air Regulatory Group ("UARG") for rehearing filed August 8, 2005; the petitions of the Clean Air Implementation Project ("CAIP") and the Environmental Protection Agency ("EPA") for rehearing filed August 8, 2005, and the responses thereto; and the motion of the State of North Dakota for leave to file a response to the petitions of CAIP and EPA, and the lodged response, it is

**ORDERED** that the motion for leave to file be denied. The Clerk is directed to return to the State of North Dakota the lodged response. It is

**FURTHER ORDERED** that UARG's petition be denied. It is

**FURTHER ORDERED** that CAIP's and EPA's petitions be denied. With respect to EPA's "Clean Units" rule, see the opinion attached to this order filed by Senior Circuit Judge Williams.* It is

**FURTHER ORDERED** that EPA's request for clarification as to any retroactive effect of the ruling on Pollution Control Project provision be denied. Because no specific retroactive application of this provision is before the court, it would be premature to rule on this request.

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:

3

Michael C. McGrail
Deputy Clerk

* With respect to the "Clean Units" rule, Circuit Judges Rogers and Tatel vote to deny the petitions for rehearing substantially for the reasons stated in the attached opinion.

WILLIAMS, *Senior Circuit Judge,* concurring in the denial of rehearing (with respect to EPA's "Clean Unit" rule).

In petitioning for rehearing, EPA for the first time calls our attention to a 1976 regulation manifesting EPA's definition of "modification" for purposes of its New Source Performance Standards ("NSPS"). As the New Source Review provisions adopted in 1977 and at issue here define "modification" simply by cross-referencing the statutory NSPS definition, the 1976 regulation may cast light on what concept of modification Congress meant for its New Source Review provisions. In fact the 1976 regulation defines a "major modification" as "includ[ing] a modification to any structure, building, facility, installation or operation (or combination thereof) which *increases the allowable emission rate* by the amounts set forth above." Requirements for Preparation, Adaptation, and Submittal of Implementation Plans, 41 Fed. Reg. 55,524, 55,528/1 (Dec. 21, 1976) (emphasis added). At first blush this appears inconsistent with our holding that the 1977 amendments required a comparison of actual (or projected actual) emissions before and after the change in question. *New York v. EPA*, 413 F.3d 3, 38-40 (D.C. Cir. 2005).

An introductory issue is whether we may properly reach the argument. In *Kamen v. Kemper Financial Services*, 500 U.S. 90 (1991), the Supreme Court ruled that while courts generally should not entertain an "issue or claim" raised for the first time in a reply brief, they were not limited to "particular legal theories" advanced by the parties, but retained "independent power to identify and apply the proper construction of governing law." *Id*. at 99. Presumably it is for this reason that we feel free to rely on case authority not mentioned by any of the parties. Cf. *Independent Ins. Agents of Am. v. Clarke*, 955 F.2d 731, 742-43 (D.C. Cir. 1992) (Silberman, J., dissenting), *rev'd sub nom., United States Nat'l Bank v. Independent Ins. Agents of*

*Am.*, 508 U.S. 439 (1993). As the parties clearly set forth their competing interpretations of the statute (the "issue or claim"), inferences from a regulation existing at the time of enactment seem to be merely a "particular legal theor[y]." Disregard of the regulation could cause us to misconstrue a statute, to adopt not a "proper" but an improper construction. Accordingly, I think it proper to consider the regulation newly called to our attention.

EPA and Industry argue that the 1976 regulation's classification of a change that "increases the allowable emission rate" as a "modification" establishes that Congress intended to grant EPA authority to use such a criterion, rather than using only changes in actual emissions, as we originally held. But the inference is extremely weak. First, the regulation interpreted by the 1976 ruling, Review of New Sources and Modifications, 40 CFR § 51.18 (1976), differed radically from § 111(a)(4). As then worded, 40 CFR § 51.18 required State Implementation Plans to call for preconstruction review of new sources or modifications that would "result in violations of applicable portions of the control strategy or . . . interfere with" the attainment or maintenance of NAAQS. Thus the language being interpreted itself included a direct focus on concepts broader than "actual" emissions. In the adoption of § 111(a)(4) as the governing standard, then, Congress was evidently superseding rather than codifying the prior regime. See *New York State v. EPA*, 413 F.3d at 12, 19-20; see also *Alabama Power Co. v. Costle*, 636 F.2d 323, 349 (D.C. Cir. 1979).

Second, as environmental petitioners note, the 1976 regulation was adopted only *provisionally*. See Pub. L. 95-95, § 129(a)(1), 91 Stat. 745 ("Before July 1, 1979, the interpretive regulation . . . shall apply."). The provisional character suggests that Congress saw the 1976 interpretation not as necessarily complying with the new statute but as merely filling a gap that would have existed before its implementation.

In both these respects the present case differs markedly from decisions where we've given great weight to regulations antedating a statute that was intended to adopt a pre-existing regulatory scheme. See *GTE Service Corp. v. FCC,* 224 F.3d 768, 771-74 (D.C. Cir. 2000).